STATE OF CONNECTICUT *v.* WAYDE DAVIS
(14715)

PETERS, C. J., BORDEN, BERDON, NORCOTT and KATZ, Js.

Argued January 12—decision released March 21, 1994*

*Dennis F. O'Toole,* assistant public defender, for the appellant (defendant).

*Leah Hawley,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Alfred Baldwin,* assistant state's attorney, for the appellee (state).

BERDON, J. The sole issue in this appeal is the determination of the burden of proof[1] that the state must

---

* March 21, 1994, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] In the present case, "burden of proof" refers to "the burden of persuading the trier of fact that the alleged fact is true." 2 C. McCormick,

meet to establish a violation of a condition of probation. In a probation revocation hearing, the trial court found that the defendant had violated a condition of his probation, and revoked the defendant's probation. The Appellate Court affirmed the judgment of the trial court, with one judge, *Freedman, J.,* dissenting. *State v. Davis,* 29 Conn. App. 801, 813, 618 A.2d 557 (1993). We granted the defendant's petition for certification,[2] and we now reverse.

In June, 1990, the defendant, Wayde Davis, pleaded guilty to and was convicted of the offense of failure to appear in the first degree, in violation of General Statutes § 53a-172. He was sentenced to a term of imprisonment of two years, execution suspended, and was placed on two years probation. At the time of sentencing, the defendant agreed to the standard terms of probation established by the office of adult probation, including the condition that he not violate any criminal law.[3]

In September, 1990, while on probation, the defendant was arrested and charged with burglary in the second degree in violation of General Statutes § 53a-102, criminal mischief in the third degree in violation of General Statutes § 53a-117, and possession of narcotics in violation of General Statutes § 21a-279. He was subsequently arrested on a warrant for violation of probation under General Statutes § 53a-32.[4] The trial court

Evidence (4th Ed. 1992) § 336, p. 425; C. Tait & J. LaPlante, Handbook of Connecticut Evidence (2d Ed. 1988) § 4.1.1.

[2] We certified the following issues for review:

"1. What is the standard of proof that the state must meet to establish a violation of a condition of probation?

"2. Did the state meet the appropriate standard in the circumstances of this case?" *State v. Davis,* 225 Conn. 918, 623 A.2d 1024 (1993). We reach only the first certified question, and leave the resolution of the second to the trial court on remand.

[3] See General Statutes § 53a-30 (a) and (b).

[4] General Statutes § 53a-32 provides: "(a) At any time during the period of probation or conditional discharge, the court or any judge thereof may

held a probation revocation hearing pursuant to § 53a-32. At the hearing, Hartford police officer Thomas Sutton testified that he had been dispatched to an apartment complex on a report of burglary, and had entered an apartment building through a rear door "reported to have been broken." He testified that the door and the lock on the door appeared to have been damaged. He then entered the basement of the building through another door, which also appeared to have

issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge, or may issue a notice to appear to answer to a charge of such violation, which notice shall be personally served upon the defendant. Any such warrant shall authorize all officers named therein to return the defendant to the custody of the court or to any suitable detention facility designated by the court. Any probation officer may arrest any defendant on probation without a warrant or may deputize any other officer with power to arrest to do so by giving him a written statement setting forth that the defendant has, in the judgment of the probation officer, violated the conditions of his probation. Such written statement, delivered with the defendant by the arresting officer to the official in charge of any correctional center or other place of detention, shall be sufficient warrant for the detention of the defendant. After making such an arrest, such probation officer shall present to the detaining authorities a similar statement of the circumstances of violation. Provisions regarding release on bail of persons charged with a crime shall be applicable to any defendant arrested under the provisions of this section. Upon such arrest and detention, the probation officer shall immediately so notify the court or any judge thereof. Thereupon, or upon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which he is alleged to have violated the conditions of his probation or conditional discharge, shall be advised by the court that he has the right to retain counsel and, if indigent, shall be entitled to the services of the public defender, and shall have the right to cross-examine witnesses and to present evidence in his own behalf.

"(b) If such violation is established, the court may continue or revoke the sentence of probation or conditional discharge or modify or enlarge the conditions, and, if such sentence is revoked, require the defendant to serve the sentence imposed or impose any lesser sentence. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by reliable and probative evidence."

been damaged, and discovered in the basement the defendant and another man, Robert Graves. The defendant was holding a spoon containing white powder. Smith determined that Graves lived in the apartment building. Sutton arrested both men for burglary, criminal mischief for the damage to the door, and possession of drugs.

The trial court found that the defendant had violated the terms of his probation by committing the crimes of burglary in the second degree and criminal mischief in the third degree.[5] The trial court revoked the defendant's probation and ordered the defendant to serve his two year sentence.

The defendant appealed from the judgment of revocation of his probation to the Appellate Court, claiming that there was insufficient evidence presented to the trial court to find that he had violated a condition of his probation. *State* v. *Davis,* supra, 29 Conn. App. 802. In its review of this claim, the Appellate Court decided that the applicable standard of proof for probation revocation proceedings under § 53a-32 was that of reasonable satisfaction, which it characterized as a lesser standard than the fair preponderance standard. Id., 810. The Appellate Court then reviewed the evidence presented to the trial court and held that it met the reasonable satisfaction standard as defined by that court. Id., 812–13.

We agree with the Appellate Court that, under § 53a-32, a probation revocation hearing has two distinct components. Id., 805. The trial court must first conduct an adversarial evidentiary hearing to determine whether the defendant has in fact violated a condition of probation. "At such hearing the defendant

---

[5] The trial court stated on the record that it had made no finding on whether the defendant had been in possession of drugs.

shall be informed of the manner in which he is alleged to have violated the conditions of his probation or conditional discharge, shall be advised by the court that he has the right to retain counsel and, if indigent, shall be entitled to the services of the public defender, and shall have the right to cross-examine witnesses and to present evidence in his own behalf." General Statutes § 53a-32 (a). If the trial court determines that the evidence has established a violation of a condition of probation, then it proceeds to the second component of probation revocation, the determination of whether the defendant's probationary status should be revoked. On the basis of its consideration of "the whole record," the trial court "may continue or revoke the sentence of probation or conditional discharge or modify or enlarge the conditions, and, if such sentence is revoked, require the defendant to serve the sentence imposed or impose any lesser sentence." General Statutes § 53a-32 (b). In making this second determination, the trial court is vested with broad discretion. *State* v. *Smith,* 207 Conn. 152, 167, 540 A.2d 679 (1988) ("[a] defendant who seeks to reverse the exercise of judicial discretion, assumes a heavy burden").

In this appeal, we are not concerned with the trial court's discretionary determination of whether probation was properly revoked under all the circumstances. We are concerned only with the first component, that is, the determination of whether there has been a violation of a condition of probation. Specifically, we must decide what standard of proof the trial court must apply to the evidence presented at the revocation hearing in order to determine whether a violation of probation has occurred. The defendant argues that, as a matter of statutory interpretation of § 53a-32, the state must meet the burden of establishing a violation of probation by the fair preponderance of the evidence pre-

sented at the revocation hearing.[6] The fair preponderance standard requires that the "evidence induc[e] in the mind of the trier a reasonable belief that it is more probable than otherwise that the fact in issue is true." (Internal quotation marks omitted.) *Lopinto* v. *Haines,* 185 Conn. 527, 533, 441 A.2d 151 (1981). On the other hand, the state argues that only "a minimum level of certainty" is required to find a violation, and that we should adopt the reasonable satisfaction standard. As defined by the Appellate Court, this standard is met by evidence producing "a rational belief of a trial court that the evidence is adequate or sufficient to prove a violation."[7] *State* v. *Davis,* supra, 29 Conn. App. 811.

---

[6] The defendant also claims that the due process clauses of the federal and state constitutions require that a finding of a violation of probation be established by a fair preponderance of the evidence. Because we determine, as a matter of statutory interpretation, that the trial court is required to utilize the fair preponderance standard, we need not decide the standard mandated by the fourteenth amendment to the United States constitution or article first, § 8, of the state constitution.

The Supreme Court of the United States has not yet enunciated a minimum standard of proof applicable to revocation hearings, although the court implied that due process would not mandate the "beyond a reasonable doubt" standard applicable to criminal trials. *Gagnon* v. *Scarpelli,* 411 U.S. 778, 789 n.12, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973); see *State* v. *Smith,* supra, 207 Conn. 177 ("the authorities are virtually unanimous in concluding that the standard of proof used in a criminal trial, namely 'beyond a reasonable doubt,' is not applicable to a probation revocation hearing").

The United States Supreme Court has also indicated, however, that a mere finding of probable cause would be constitutionally insufficient to deprive a defendant of his conditional liberty interest in the status of probation. *Morrissey* v. *Brewer,* 408 U.S. 471, 488, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972) (final revocation hearing "must be the basis for more than determining probable cause; it must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation"). Some commentators have taken the position that the preponderance standard is the minimum standard that can be applied in a revocation hearing consistent with the due process clause of the federal constitution. E.g., Resource Center on Correctional Law and Legal Services, "Accelerating Change in Correctional Law: The Impact of *Morrissey,*" reprinted in Parole (W. Amos & C. Newman eds. 1975) pp. 130, 139; 3 W. LaFave & J. Israel, Criminal Procedure (1984) § 25.4, p. 162.

[7] Judge Freedman, in his dissent, agreed with the Appellate Court majority that the standard of proof in determining whether there has been

This court has provided little guidance in the past as to the burden of proof governing probation violation determinations, other than the statement that the applicable standard is "substantially lower than that for conviction." *State* v. *Roberson,* 165 Conn. 73, 80, 327 A.2d 556 (1973). While we have stated in the past that the trial court must be "reasonably satisfied" that a violation has occurred; id.; *State* v. *Smith,* supra, 207 Conn. 167; we have never specifically addressed the qualitative nature of the burden of persuasion required of the state in a revocation proceeding. Our reference to the reasonable satisfaction standard in *Smith* was not only dictum, but the standard was never defined, because the defendant Smith admitted to the trial court that he had violated his probation. *State* v. *Smith,* supra, 156–57. Similarly, in *State* v. *Roberson,* supra, 74, we were not required to set out a standard of proof for weighing conflicting evidence at a probation revocation hearing, but instead addressed the narrow issue of whether proof of a criminal conviction in a prior proceeding while on probation, standing alone, is sufficient evidence of a violation of probation. Finally, although the Appellate Court applied the reasonable satisfaction standard in *State* v. *Johnson,* 11 Conn. App. 251, 258, 527 A.2d 250 (1987), and *Payne* v. *Robinson,* 10 Conn. App. 395, 403, 523 A.2d 917 (1987), aff'd, 207 Conn. 565, 541 A.2d 504, cert. denied, 488 U.S. 898, 109 S. Ct. 242, 102 L. Ed. 2d 230 (1988), it did not define reasonable satisfaction in qualitative terms in those cases. Accordingly, we decide this case with a clean slate.

The only language of the statute bearing on the state's burden of proving a violation of probation is that

---

a violation of probation is reasonable satisfaction, but defined reasonable satisfaction to be the fair preponderance of the evidence. *State* v. *Davis,* supra, 29 Conn. App. 814 (*Freedman, J.,* dissenting); see *Wink* v. *State,* 317 Md. 330, 340–41, 563 A.2d 414 (1989) (reasonable satisfaction requires proof by a preponderance of the evidence).

the trial court must find that "such violation is established by reliable and probative evidence." General Statutes § 53a-32 (b). We agree with the Appellate Court that § 53a-32 is silent with regard to the applicable standard of proof, as the "reliable and probative" language "concerns the nature of the evidence to be considered but is unrelated to the standard of proof that the court should apply in deciding the factual question of whether a violation of probation has occurred." *State* v. *Davis,* supra, 29 Conn. App. 807. Although we look to legislative history for guidance when a statute is silent as to a matter clearly encompassed in the purview of that statute; *In re Valerie D.,* 223 Conn. 492, 512–13, 613 A.2d 748 (1992); the state correctly points out that there is no legislative history indicating an intention to establish any particular standard of proof with respect to probation revocation hearings.

The function of the burden of proof employed by the court is to "allocat[e] the risk of error between the litigants and indicat[e] the relative importance of the ultimate decision. *Addington* v. *Texas,* 441 U.S. 418, 423, 99 S. Ct. 1804, 1808, 60 L. Ed. 2d 323 (1979). . . ." (Internal quotation marks omitted.) *Cookson* v. *Cookson,* 201 Conn. 229, 234, 514 A.2d 323 (1986). "For example, the proof beyond a reasonable doubt standard implies that the party on whom that burden is imposed should bear almost the entire risk of error. . . ."[8] (Internal quotation marks omitted.) Id. "Proof by clear and convincing evidence is an intermediate standard generally used in civil cases involving allegations of

[8] The standard used in criminal proceedings requires that every element of a criminal offense be proven beyond a reasonable doubt, which requires proof that " 'precludes every reasonable hypothesis except that which it tends to support, and is consistent with the defendant's guilt and inconsistent with any other rational conclusion.' " *State* v. *Carpenter,* 214 Conn. 77, 84, 570 A.2d 203 (1990), on appeal after remand, 220 Conn. 169, 595 A.2d 881 (1991), cert. denied, 502 U.S. 1034, 112 S. Ct. 877, 116 L. Ed. 2d 181 (1992).

fraud or some other quasi-criminal wrongdoing, or when particularly important individual rights are involved. . . ."[9] (Internal quotation marks omitted.) Id. The preponderance of the evidence standard "indicates that the litigants should share equally the risk of error . . . because the interests at stake have roughly equal societal importance. . . ." (Internal quotation marks omitted.) Id.

Although we do not decide the constitutional issue raised by the defendant, we must examine the issue of the applicable standard of proof for probation revocation proceedings in the context that the privilege of probation, once granted, is a constitutionally protected interest. "The due process clause of the fourteenth amendment to the United States constitution requires that certain minimum procedural safeguards be observed in the process of revoking the conditional liberty created by probation. *Black* v. *Romano,* 471 U.S. 606, 610, 105 S. Ct. 2254, 85 L. Ed. 2d 636 (1985); see *Morrissey* v. *Brewer,* 408 U.S. 471, 489, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)." *State* v. *Durkin,* 219 Conn. 629, 635, 595 A.2d 826 (1991). This is so because "the loss of liberty entailed is a serious deprivation requiring that the [probationer] be accorded due process." *Gagnon* v. *Scarpelli,* 411 U.S. 778, 781, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973). "Among other things, due process entitles a probationer to a final revocation hearing under the conditions set forth in *Morrissey* v. *Brewer,* supra[10] . . . see *Gagnon* v. *Scarpelli,* [supra,

---

[9] The clear and convincing standard is met by evidence that "induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Internal quotation marks omitted.) *State* v. *Bonello,* 210 Conn. 51, 66, 554 A.2d 277, cert. denied, 490 U.S. 1082, 109 S. Ct. 3268, 106 L. Ed. 2d 612 (1989).

[10] In *Morrissey* v. *Brewer,* supra, 408 U.S. 489, the United States Supreme Court held that due process mandates that the revocation of parole must be predicated upon facts established at an adversarial hearing with cer-

782]; see also *State* v. *Roberson,* [supra, 165 Conn. 81–82]; *State* v. *Crawford,* 38 Conn. Sup. 472, 474–75, 451 A.2d 583 (1982); see generally General Statutes § 53a-32 (a)." *State* v. *Durkin,* supra, 635.

On the other hand, " '[a]lthough a [probation] revocation proceeding must comport with the requirements of due process, it is not a criminal proceeding.' *Minnesota* v. *Murphy,* 465 U.S. 420, 435 n.7, 104 S. Ct. 1136, 79 L. Ed. 2d 409, reh. denied, 466 U.S. 945, 104 S. Ct. 1932, 80 L. Ed. 2d 477 (1984)." *State* v. *Durkin,* supra, 219 Conn. 636 n.8. It therefore "does not require all of the procedural components associated with an adversary criminal proceeding. *Gagnon* v. *Scarpelli,* supra [411 U.S. 783 n.5, 788–89]; *Morrissey* v. *Brewer,* supra, [408 U.S. 480, 489] . . . ." *State* v. *Smith,* supra, 207 Conn. 177.

We conclude today, on the basis of the following reasons, that the state has the burden of establishing a violation of probation by a fair preponderance of the evidence under § 53a-32. First, we agree with those authorities that hold that the probation revocation procedure established by § 53a-32 is akin to a civil proceeding. See *Turner* v. *State,* 784 S.W.2d 342, 344 (Mo. App. 1990); *State* v. *Hodges,* 798 P.2d 270, 278 (Utah App. 1990). Therefore, our determination is guided by the general rule that when a civil statute is silent as to the applicable standard of proof, the preponderance

tain minimum procedural safeguards, including written notice of the claimed violation, disclosure to the parolee of the evidence against him or her, an opportunity to be heard in person and present witnesses and documentary evidence, the right to confront and cross-examine adverse witnesses, a neutral and detached fact finder, and a written statement by the fact finder detailing the evidence relied on and reasons for revoking parole. In *Gagnon* v. *Scarpelli,* supra, 411 U.S. 782 and n.3, the United States Supreme Court held that the revocation of probation is "constitutionally indistinguishable from the revocation of parole," and therefore the revocation of probation must be predicated upon a hearing with these same procedural safeguards.

of the evidence standard governs factual determinations required by that statute. See *Freeman* v. *Alamo Management Co.,* 221 Conn. 674, 678, 607 A.2d 370 (1992); *Mallory* v. *Mallory,* 207 Conn. 48, 52, 53, 539 A.2d 995 (1988) (fair preponderance is "the ordinary civil standard of proof"). This general rule is properly applied to probation revocation proceedings. *Wink* v. *State,* 317 Md. 330, 334, 563 A.2d 414 (1989); *Turner* v. *State,* supra, 344; *State* v. *Hodges,* supra (analogizing probation conditions to a contract between the state and the court; "[a]s in a contract dispute, proof of breach by the probationer is properly subject to a preponderance of evidence standard").

We have applied this general rule to statutes that affect other important interests that are not purely financial. *Verrastro* v. *Middlesex Ins. Co.,* 207 Conn. 179, 183, 540 A.2d 693 (1988) (proof of criminal activity as element of a civil action); *Mallory* v. *Mallory,* supra, 207 Conn. 52–53 (determination of whether a parent has sexually abused a child for the purposes of child custody modification); *Lavertue* v. *Niman,* 196 Conn. 403, 407, 493 A.2d 213 (1985) (general rule applied to paternity actions despite their " 'quasi-criminal' overtones"); *Lombardo* v. *State,* 172 Conn. 385, 390–91, 374 A.2d 1065 (1977) (petition for a new trial following a criminal conviction on grounds of newly discovered evidence).

Second, adoption of the fair preponderance standard best furthers the interests of the probationer and the state in the revocation proceeding. Of course, the probationer is interested in maintaining his or her liberty. Nevertheless, one of the primary purposes of probation is to promote the rehabilitation of the probationer. *State* v. *Smith,* supra, 207 Conn. 164; *Belden* v. *Hugo,* 88 Conn. 500, 504, 91 A. 369 (1914). Because both society and the probationer share an interest in a successful rehabilitative process, the state, as well as the

probationer, has an interest in a *reliable* determination of whether probation has been violated. *Payne* v. *Robinson,* 207 Conn. 565, 574, 541 A.2d 504, cert. denied, 408 U.S. 898, 109 S. Ct. 242, 102 L. Ed. 2d 230 (1988) (rational basis for admission of evidence otherwise subject to exclusionary rule exists, because "the state has a legitimate interest in *accurate* factfinding in probation revocation proceedings" [emphasis added]); see *Gagnon* v. *Scarpelli,* supra, 411 U.S. 785 ("[b]oth the probationer . . . and the State have interests in the accurate finding of fact and the informed use of discretion"); *Morrissey* v. *Brewer,* supra, 408 U.S. 484.

The important interests in the probationer's liberty and rehabilitation must be balanced, however, against the need to protect the public. Accordingly, probation is granted subject to conditions "meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large."[11] (Internal quotation marks omitted.) *State* v. *Smith,* supra, 207 Conn. 165; see *Gagnon* v. *Scarpelli,* supra, 411 U.S. 785; *Morrissey* v. *Brewer,* supra, 408 U.S. 478. Therefore, "the government's interest is not confined to 'unnecessarily interrupting a successful effort at rehabilitation.' The government also has an important interest in not 'imprudently prejudicing the safety of the community.' " *Harris* v. *United States,* 612 A.2d 198, 207 (D.C. App. 1992), quoting *Gagnon* v. *Scarpelli,* supra, 785. We agree with other courts that have held that

---

[11] That the purpose of probation is to rehabilitate the probationer without endangering the public is indicated in the statute that authorizes the initial placement of a defendant on probation. General Statutes § 53a-29. Under § 53a-29, suspension of sentence and probation are available if the sentencing court determines that "(1) [p]resent or extended institutional confinement of the defendant is not necessary for the protection of the public; (2) the defendant is in need of guidance, training or assistance which, in his case, can be effectively administered through probation supervision; and (3) such disposition is not inconsistent with the ends of justice."

the sometimes competing and sometimes coinciding interests of the probationer and the state are best balanced by the preponderance of the evidence standard. *People* v. *Rodriguez,* 51 Cal. 3d 437, 445–46, 795 P.2d 783, 272 Cal. Rptr. 613 (1990); *Harris* v. *United States,* supra, 207 ("the application of the preponderance standard . . . most appropriately protects the interests of both the government and the probationer" [internal quotation marks omitted]); see also H. Fisher, "Probation and Parole Revocation Procedures after *Morrissey* and *Gagnon,"* 65 J. Crim. L. and Criminology 46, 61 (1974) (advocating preponderance of evidence standard as a minimum standard for revocation hearings).

Finally, it is unlikely that the legislature would have provided for the substantial adversarial safeguards in § 53a-32, including the right to present evidence and cross-examine witnesses, as well as the right to counsel for every probationer, without also intending that the standard of proof governing these proceedings be more reliable than mere reasonable satisfaction as defined by the Appellate Court. That standard, allowing a trial court to find a violation of probation although the evidence presented at the revocation hearing merely produces a rational belief that the probationer violated a condition of probation, is inconsistent with these procedural safeguards.

Our conclusion is buttressed by the overwhelming number of states that utilize the preponderance of the evidence standard in the determination of whether probation has been violated. The majority of states (twenty-six) and the District of Columbia currently utilize the preponderance of the evidence standard;[12] four

---

[12] *Rich* v. *State,* 640 P.2d 159, 163 (Alaska App. 1982); *State* v. *Gerlaugh,* 134 Ariz. 164, 171, 654 P.2d 800 (1982); *Baldridge* v. *State,* 31 Ark. App. 114, 116, 789 S.W.2d 735 (1990); *People* v. *Rodriguez,* supra, 51 Cal. 3d 447; *Harris* v. *United States,* supra, 612 A.2d 207; *Rita* v. *State,* 470 So.

states apply a higher standard;[13] and nine apply the
reasonable satisfaction standard or a lower stan-

2d 80, 85 (Fla. Dist. App.), review denied, 480 So. 2d 1296 (Fla. 1985)
("greater weight of the evidence"); *People* v. *Wadelton,* 82 Ill. App. 3d 684,
687, 402 N.E.2d 932 (1980); *Jaynes* v. *State,* 437 N.E.2d 137, 139 (Ind. App.
1982); *Calvert* v. *State,* 310 N.W.2d 185, 187 (Iowa 1981), cert. denied, 456
U.S. 930, 102 S. Ct. 1980, 72 L. Ed. 2d 447 (1982); *State* v. *Carter,* 5 Kan.
App. 2d 201, 206, 614 P.2d 1007 (1980); *Rasdon* v. *Commonwealth,* 701
S.W.2d 716, 719 (Ky. App. 1986); *State* v. *LaCasce,* 512 A.2d 312, 316 (Me.
1986); *Wink* v. *State,* supra, 317 Md. 332; *People* v. *Ison,* 132 Mich. App.
61, 66, 346 N.W.2d 894 (1984); *Turner* v. *State,* supra, 784 S.W.2d 344;
*Stapleford* v. *Perrin,* 122 N.H. 1083, 1089, 453 A.2d 1304 (1982); *State* v.
*Reyes,* 207 N.J. Super. 126, 137, 504 A.2d 43 (App. Div. 1986), cert. denied,
103 N.J. 499, 511 A.2d 671 (1986); *People* v. *Hemphill,* 120 App. Div. 2d
767, 768, 501 N.Y.S.2d 503 (1986); *State* v. *Saavedra,* 406 N.W.2d 667, 669
(N.D. 1987); *McCaskey* v. *State,* 781 P.2d 836, 837 (Okla. Crim. App. 1989);
*State* v. *Donovan,* 305 Or. 332, 335, 751 P.2d 1109 (1980); *Commonwealth*
v. *Brown,* 503 Pa. 514, 520 n.2, 469 A.2d 1371 (1983); *Lloyd* v. *State,* 574
S.W.2d 159, 160 (Tex. Crim. App. 1978); *State* v. *Hodges,* supra, 798 P.2d
278; *State* v. *Begins,* 147 Vt. 295, 297, 514 A.2d 719 (1986); *State ex rel.*
*Thompson* v. *Riveland,* 109 Wis. 2d 580, 585, 326 N.W.2d 768 (1982); *Krow*
v. *State,* 840 P.2d 261, 264 (Wyo. 1992).

[13] *In re C.B.,* 196 Colo. 362, 364, 585 P.2d 281 (1978) (violations that con-
stitute criminal offenses must be proven beyond a reasonable doubt; viola-
tions of conditions that are not criminal offenses proven by clear and
convincing evidence); *State* v. *Ehmke,* 400 N.W.2d 839, 840 (Minn. App.
1987) (clear and convincing standard); *State* v. *Finnegan,* 232 Neb. 75, 77,
439 N.W.2d 496 (1989) (clear and convincing standard); *State* v. *Bowman,*
180 W. Va. 196, 198–99, 375 S.E.2d 829 (1988) (clear preponderance, which
requires more persuasive proof than the preponderance of the evidence
standard).

The American Bar Association has recommended that the clear and con-
vincing standard be utilized in determining if a condition of probation has
been violated. 3 ABA Standards for Criminal Justice (2d Ed. 1986) Stan-
dard 18-7.5 (e) (iii). The committee reasoned as follows: "Underlying this
position is the premise that a liberty interest should not be sacrificed sim-
ply on the 'preponderance' standard, which is normally applicable only to
civil trials. Otherwise, an unfortunate incentive might arise to use the revo-
cation hearing as a substitute for a criminal prosecution with its higher
standard of proof. Even where this incentive is not present, the focus of
the law should be on the precipitating event that is said to justify the loss
of present liberty. Where the original crime did not require incarcera-
tion, subsequent behavior that is considered sufficient to justify confine-
ment should be established under a standard that approaches providing the

dard.[14] Although nearly all of the federal Circuit Courts use a standard labeled reasonable satisfaction,[15] only two Circuit Courts have indicated, as did our Appellate Court, that this standard can be met upon less evidence than a preponderance.[16] Indeed, at least one state Supreme Court has determined that the reasonable satisfaction standard is the same as the preponderance standard. *Wink* v. *State,* supra, 317 Md. 340–41.[17]

same assurance of factual accuracy that a criminal trial does." Id., commentary, p. 18-533.

Indeed, the legislatures of two states have provided for a clear and convincing standard in probation revocation proceedings; Minn. R. Crim. Proc. § 27.04 subd. 3 (3) (1994 Sup.); Neb. Rev. Stat. § 29-2267 (Reissue 1989); and the legislature in Colorado has required that when a violation is based on a criminal offense, it must be proven in the revocation hearing beyond a reasonable doubt. Colo. Rev. Stat. Annot. § 16-11-206 (3) (1986).

[14] *Powell* v. *State,* 485 So. 2d 379, 381 (Ala. 1986); *Brown* v. *State,* 249 A.2d 269, 272 (Del. 1968); *Cordle* v. *State,* 173 Ga. App. 369, 370, 326 S.E.2d 557 (1985) ("slight evidence"); *State* v. *Ford,* 218 Mont. 215, 220, 707 P.2d 16 (1985); *Dail* v. *State,* 96 Nev. 435, 440, 610 P.2d 1193 (1980); *State* v. *Tozzi,* 84 N.C. App. 517, 521, 353 S.E.2d 250 (1987); *In re Lamarine,* 527 A.2d 1133, 1135 (R.I. 1987); *State* v. *Herrlein,* 424 N.W.2d 376, 377–78 (S.D. 1988); *State* v. *Badger,* 64 Wash. App. 904, 908, 827 P.2d 318 (1992).

The remaining states either apply some other standard or have no published opinion setting out a standard. See, e.g., *State* v. *Milton,* 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984) (evidence sufficient "if it allows the trial court to make a conscientious and intelligent judgment").

[15] See *Harris* v. *United States,* supra, 612 A.2d 204 and n.10 (citing cases; every federal Circuit Court uses the reasonable satisfaction standard except for the Tenth Circuit, which has no reported case deciding the issue).

[16] See *United States* v. *Torrez-Flores,* 624 F.2d 776, 782 (7th Cir. 1980) ("court need only be 'reasonably satisfied' and need not find by a preponderance of the evidence that a violation has occurred"); *United States* v. *Francischine,* 512 F.2d 827, 829 (5th Cir. 1975) ("[p]robably evidence rising to the level of substantial evidence is not even required . . . . All that is required is that the evidence and facts be such as to reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation.").

[17] In *Wink* v. *State,* supra, 317 Md. 334–38, the Court of Appeals of Maryland held that the reasonable satisfaction standard, long applied by the courts of that state, requires that the trial court find the existence of a violation of probation by the preponderance of the evidence. Rejecting a conclusion by an intermediate appellate court that the reasonable satisfaction standard requires less persuasive evidence than the preponderance of

The state argues that this court should not adopt a preponderance of the evidence standard because "it would import a full-blown evidentiary hearing standard into a proceeding that should remain informal and flexible." Of course, the ultimate determination of whether probation should be revoked must be flexible and allow for a great degree of discretion in the trial court. *State v. Smith,* supra, 207 Conn. 167. " ' "The success of probation as a correctional tool is in large part tied to the flexibility within which it is permitted to operate." [ABA Project on Standards for Criminal Justice, Standards Relating to Probation (1970) § 3.3, commentary].' *Buckley* v. *Quincy Division of District Court Dept.,* 395 Mass. 815, 818, 482 N.E.2d 511 (1985)." *State* v. *Smith,* supra, 171.

We disagree with the state, however, that adoption of a fair preponderance standard for determining whether a violation has occurred will adversely affect the flexibility and broad discretion that the trial court must exercise in its ultimate determination of whether probation should be revoked. We merely require proof by a preponderance of the evidence to establish the " 'wholly retrospective factual question' "; *Gagnon* v. *Scarpelli,* supra, 411 U.S. 784; of whether a condition of probation has been violated. In the second component of revocation proceedings, trial courts will continue to have broad discretion to determine whether the ends of probation are best served by revocation. *People* v. *Rodriguez,* supra, 51 Cal. 3d 445 (fair preponderance standard for determination of existence of vio-

the evidence standard; id., 339; the court reasoned: "We have great difficulty in conceptualizing how a reasonable satisfaction standard can meaningfully operate below the level of a preponderance of the evidence while the State would still bear the burden to produce evidence and the burden of persuasion. We hold that for purposes of factfinding in probation revocation cases references in our decisions to the reasonable satisfaction of the trial court mean that the trial judge must find the essential facts comprising a violation of condition by a preponderance of the evidence." Id., 340–41.

lation is compatible with the broad discretion and flexibility that underlies the ultimate revocation determination).

As the United States Supreme Court noted with regard to parole (or probation[18]) revocation, the fostering of accurate fact-finding in the initial violation determination should indeed inure to the benefit of the discretionary revocation determination. The discretionary component of revocation proceedings "involves the application of expertise by the [decision maker] in making a prediction as to the ability of the individual to live in society without committing antisocial acts. This part of the decision, too, depends on facts, and therefore it is important for the [decision maker] to know not only that some violation was committed but also to know *accurately* how many and how serious the violations were." (Emphasis added.) *Morrissey* v. *Brewer,* supra, 408 U.S. 480.

We hold that a trial court may not find a violation of probation unless it finds that the predicate facts underlying the violation have been established by a preponderance of the evidence at the hearing—that is, the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation.

In the revocation hearing in this case, the trial court did not indicate what standard of proof it had applied to the evidence, merely stating: "The court is convinced that it has heard reliable and appropriate evidence to the effect that there has been a violation of the probation condition and so a violation is found." Ordinarily, in a civil case, we assume that a trial court has applied the fair preponderance of the evidence standard when it has failed to indicate the standard applied. *In re Juvenile Appeal (83-AB),* 189 Conn. 58, 59, 454

---

[18] See footnote 10.

A.2d 271 (1983). Nevertheless, because the trial court articulated a standard of "appropriate evidence," we are uncertain as to the standard of proof applied by that court. This is particularly so because of the dicta in our prior decisions referring to the "reasonable satisfaction" standard. Therefore, this case should be remanded to the trial court for a determination of whether the state can prove by a fair preponderance of the evidence that the defendant violated a condition of his probation.

The judgment of the Appellate Court is reversed, and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case for a new probation revocation hearing.

In this opinion the other justices concurred.