STATE OF CONNECTICUT *v.* REINALDO RAMOS
(12487)

LANDAU, SCHALLER and SPEAR, Js.

Argued October 26, 1994—decision released February 14, 1995

*Kent Drager,* assistant public defender, for the appellant (defendant).

*Linda N. Howe,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *John Blawie,* assistant state's attorney, for the appellee (state).

SCHALLER, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of attempted murder in violation of General Statutes §§ 53a-49[1] and 53a-54a (a),[2] robbery in the first degree in violation of General Statutes § 53a-134 (a) (2),[3] and carrying a pistol on his person without a permit in violation of General Statutes §§ 29-35[4] and 29-37 (b).[5] The jury did not render a verdict on the alternative charge of assault in the first degree in violation of General Statutes § 53a-59 (a) (1). The defendant claims that the trial

[1] General Statutes § 53a-49 (a) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[2] General Statutes § 53a-54a (a) provides in pertinent part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

[3] General Statutes § 53a-134 (a) provides in pertinent part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime; or (2) is armed with a deadly weapon; or (3) uses or threatens the use of a dangerous instrument; or (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ."

[4] General Statutes § 29-35 provides in pertinent part: "(a) No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. . . ."

[5] General Statutes § 29-37 (b) provides: "Any person violating any provision of subsection (a) of section 29-35 may be fined not more than one thousand dollars and shall be imprisoned not less than one year nor more than five years, and, in the absence of any mitigating circumstances as determined by the court, one year of the sentence imposed may not be suspended or reduced by the court. The court shall specifically state the mitigating circumstances, or the absence thereof, in writing for the record. Any pistol or revolver found in the possession of any person in violation of any provision of subsection (a) of section 29-35 shall be forfeited."

court improperly (1) disallowed a requested instruction to the jury on reckless assault in the second degree as a lesser included offense of the alternative charge of intentional assault in the first degree, (2) disallowed the defendant's cross-examination of an eyewitness about her feelings and reactions to watching a shooting, (3) failed to grant the defendant's motion to preclude the eyewitness' testimony even though she had viewed the defendant in shackles, and (4) (a) instructed the jury panel by providing a misleading and prejudicial example of the function of the presumption of innocence, (b) allowed the prosecutor to commit misconduct, (c) instructed the jury concerning its duty, and (d) instructed the jury in a manner that diluted the state's burden of proof beyond a reasonable doubt.[6] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On September 16, 1991, Carmen Ortiz, a resident of Father Panik Village, was looking out her window onto the courtyard when she saw a Caucasian man, the victim, seated outside. The victim was holding a key chain and what appeared to Ortiz to be a $10 bill. A Hispanic male carrying a gun approached the victim and demanded his money. After the victim refused to hand over the money, the man pointed the gun at the victim's head. After shooting the victim in the side of the head, the man grabbed the money and ran. Ortiz, a certified nurse's aid, went into the courtyard to give the victim first aid. The victim survived the attack.

Ortiz recognized the Hispanic man as someone known as Indio, a person whose muscular physique she had admired in the past. Having given the police a sworn statement describing the robbery incident, Ortiz iden-

---

[6] Because we affirm the judgment, we decline to review the defendant's final claim that if we were to reverse the judgment, the defendant's violation of probation would also have to be reversed.

tified the perpetrator from a photographic array containing a picture of a man known as Indio. The picture that she chose was that of the defendant. The victim later positively identified the defendant as the robber. The defendant was arrested for the robbery and the shooting.

In addition to charging the jury on robbery in the first degree and carrying a pistol without a permit, the trial court instructed the jury that the attempted murder and first degree assault were alternative charges, with respect to which the jury could find the defendant guilty of one or neither but not both.

I

The defendant claims that the trial court improperly declined the defendant's request to instruct the jury on reckless assault in the second degree as a lesser included offense of intentional assault in the first degree. The defendant argues that whether the gun was fired intentionally or recklessly was a question for the jury to decide and, therefore, the trial court should have allowed the jury to consider the lesser included offense. We disagree.

The trial court's refusal to "instruct the jury on warranted lesser included offenses cannot be held harmless merely because the defendant was convicted of a greater offense . . . ." *State* v. *Hall,* 213 Conn. 579, 588, 569 A.2d 534 (1990); see *State* v. *Monte,* 131 Conn. 134, 137, 38 A.2d 434 (1944). " 'A defendant is entitled to an instruction on a lesser offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their

proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser.' *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980) . . . ." (Citation omitted.) *State* v. *Sivri,* 231 Conn. 115, 138, 646 A.2d 169 (1994).

The state argues that the defendant failed to meet all four *Whistnant* conditions. We enter the *Whistnant* analysis through the third condition. See *State* v. *Rasmussen,* 225 Conn. 55, 66, 621 A.2d 728 (1993). In order for the defendant to satisfy the third prong of *Whistnant,* he must offer some evidence justifying conviction of the lesser crime. "The critical element distinguishing murder from its lesser included offenses is intent . . . . We must determine if the 'evidence suggests at least a possibility' that the defendant acted with a lesser intent than that of the specific intent to kill. *State* v. *Falby,* 187 Conn. 6, 30, 444 A.2d 213 (1982). If 'we cannot as a matter of law exclude this possibility'; id.; then the defendant was entitled to lesser included offense instructions." *State* v. *Sivri,* 231 Conn. 138–39.

In this case, the state offered ample evidence from which the jury reasonably could have found that the defendant possessed the intent to kill the victim. No evidence was educed from which the jury could reasonably have inferred that the gun was fired recklessly. The defendant was carrying a gun when he approached the victim and demanded his money. After the victim refused, the defendant raised his gun to the victim's head and shot him. There was no evidence that this was a sudden or spontaneous incident that caused the victim to suffer a near fatal injury. See id., 139. The defendant did not accidently get caught up in an unexpected incident that resulted

in the victim's injury. On the contrary, the evidence indicated that the defendant created the incident. The defendant not only decided to rob the victim, but also chose to use a gun to commit the crime. The only reasonable inference that the jury could have drawn is that the defendant either intended to kill or intended to cause serious physical injury when he pointed the gun to the victim's head before he fired the weapon. Our Supreme Court in *Sivri* found that the third prong of *Whistnant* was satisfied because there was a possibility that there was a lesser intent than intent to kill. Id. In *Sivri,* the defendant was convicted of murder on the basis of the presence of a large amount of the victim's blood in the defendant's home. Id. The trial court refused to instruct the jury on lesser included offenses of homicide. Id., 137–38. Our Supreme Court determined from the large amount of blood and the setting, a family room in a residence, that the jury could have reasonably inferred from the evidence that " 'there was a sudden or spontaneous incident' " that resulted in the victim's unintended death. Id., 139. Unlike in this case, the jury in *Sivri* reasonably could have inferred a lesser intent on the defendant's part on the basis of the lack of evidence as to intent. In this case, the state has provided sufficient evidence to support a finding of intent to kill while no evidence was offered that would justify conviction on the lesser offense. Accordingly, the third prong of *Whistnant* was not satisfied.

The defendant also failed to satisfy the fourth prong of *Whistnant.* "The fourth prong of *Whistnant* requires that we determine if the proof on intent that differentiates the lesser offense from the offense charged was sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." Id., 139–40. In this case, the proof of intent came from an eyewitness who saw the defendant raise the gun to the victim's head before

firing it. The testimony of the witness was not contradicted; moreover, it was buttressed by the evidence of the head injury suffered by the victim. We cannot say, therefore, that the proof of intent was sufficiently in dispute to permit the jury consistently to find the defendant not guilty of the attempted murder charge but guilty of reckless assault in the second degree. We conclude that the trial court's refusal to instruct on the lesser included offense was not improper.

## II

The defendant next asserts that the trial court improperly interfered with the defendant's confrontation right to cross-examine the state's key witness. When the state objected to defense counsel's question concerning the witness' feelings on seeing the shooting, defense counsel claimed the question on the ground that the witness had "indicated some sort of infatuation with [the defendant] from a distance." The defendant now argues that when the trial court sustained the state's objection to a question concerning Ortiz' feelings about seeing someone suffer a gunshot, the court precluded the defendant from inquiring into the witness' ability to perceive the event accurately. This preclusion, the defendant argues, impeded the defendant's ability to cross-examine the state's witness and violated the defendant's sixth amendment confrontation right.

In order for this court to review an issue on appeal, the appellant must have objected specifically to the testimony in question and have given the proper grounds for the objection. *State* v. *Williams*, 231 Conn. 235, 645 A.2d 999 (1994); *State* v. *Christiano*, 228 Conn. 456, 637 A.2d 382, cert. denied, U.S. , 115 S. Ct. 83, 130 L. Ed. 2d 36 (1994). "This court is not in any way

bound to consider claims of law not properly raised at trial. *State* v. *Robinson*, 227 Conn. 711, 741, 631 A.2d 288 (1993); *State* v. *Brice*, 186 Conn. 449, 457, 442 A.2d 906 (1982)." *State* v. *Carter*, 34 Conn. App. 58, 73, 640 A.2d 610, cert. granted, 229 Conn. 919, 644 A.2d 915 (1994). "Review of evidentiary rulings is limited to the specific legal ground raised on the objection." *State* v. *Anderson*, 28 Conn. App. 833, 844, 614 A.2d 438, rev'd, 227 Conn. 518, 631 A.2d 1149 (1993); see also Practice Book § 288.

The reasons for the objection that the defendant now gives differ from the reasons given at trial. The defendant asks for review of this claim under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[7] The defendant failed, however, to brief this issue adequately under the four prong analysis presented in *Golding*. We decline to review this claim further because of the inadequate briefing of the issue. See *State* v. *Tweedy*, 219 Conn. 489, 510 n.17, 594 A.2d 906 (1991); *State* v. *Merritt*, 36 Conn. App. 76, 97, 647 A.2d 1021, cert. granted, 231 Conn. 926, 648 A.2d 165 (1994); *State* v. *Yopp*, 35 Conn. App. 740, 750, 646 A.2d 298 (1994); see also Practice Book § 4065.[8]

---

[7] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

[8] A more complete discussion of this issue is contained in part IV of this opinion. Although the inadequate analysis in the defendant's brief does not require us to conduct a full *Golding* analysis, we note that the defendant's argument that his inability to pose the question at issue interfered with his sixth amendment confrontation rights lacks merit. Our Supreme Court has repeatedly stated that a defendant's right to cross-examine a witness is "not absolute and is subject to reasonable limitation." *State* v. *Vitale*, 197 Conn. 396, 401, 497 A.2d 956 (1985); see also *State* v. *Lee*, 229 Conn.

## III

The defendant next asserts that the trial court improperly failed to grant his motion to preclude Ortiz from testifying. The defendant argues that Ortiz' testimony was prejudiced because she saw the defendant in shackles in the hallway during a trial recess. The defendant asserts that he could not cross-examine Ortiz about the effect of this viewing without revealing to the jury that the defendant was incarcerated and in shackles.

When the defendant objected to the witness' testimony, the trial court indicated that the objection was premature and should be raised at the same time as a pending motion to suppress an out-of-court photographic identification. Although the trial court then denied the defendant's motion to preclude Ortiz from testifying based on the hallway viewing, the court stated that the defendant would be allowed to reassert the objection when the photographic array issue was raised. At that later time, however, the defendant failed to reassert his objection to Ortiz' testimony based on the hallway viewing.

Because the defendant failed to pursue his original objection, the issue was effectively abandoned. Practice Book § 4185 provides: "The court on appeal shall not be bound to consider a claim unless it was distinctly raised at the trial . . . ." Furthermore, " '[t]he purpose of requiring trial counsel to object properly is not merely formal: it serves to alert the trial court to purported error while there is time to correct it without ordering a retrial.' *State* v. *Christiano*, 228 Conn. 456,

60, 640 A.2d 553 (1994); *State* v. *Harris*, 227 Conn. 751, 631 A.2d 309 (1993). Although the trial court sustained the state's objection to one question, the court did not preclude the defendant from pursuing the line of questioning in a permissible manner. The defendant's right to confrontation was not impeded.

464, 637 A.2d 382 (1994)." *State* v. *Williams*, supra, 231 Conn. 246. The trial court offered the defendant the opportunity to renew his objection at a more fitting time. The defendant's failure to pursue the objection at that time did not sufficiently alert the trial court that the issue had been raised. To the extent that this claim was not preserved at trial, the defendant urges review under *State* v. *Golding*, supra, 213 Conn. 233. Again, the defendant failed to brief this issue according to the analysis laid out in *Golding*; accordingly, we decline to review this claim further. *State* v. *Tweedy*, supra, 219 Conn. 510 n.17; *State* v. *Merritt*, supra, 36 Conn. App. 97; *State* v. *Yopp*, supra, 35 Conn. App. 750; see also Practice Book § 4065.[9]

## IV

The defendant next asserts that the trial court improperly (1) instructed some of the prospective jurors with a misleading and prejudicial example of the function of the presumption of innocence, which included a suggestion of checking witnesses with a lie detector test, (2) allowed the prosecutor to commit misconduct, (3) instructed the jury in a manner that failed to explain the jury's role concerning the determination of the credibility of witnesses, and (4) instructed the jury in a manner that diluted the state's burden of proof beyond a reasonable doubt. Conceding that these claims were not properly preserved at trial, the defendant asks for review of these issues under *State* v. *Golding*, 213 Conn. 233.

Despite the mention of *Golding* as the standard of review requested for these claims, the defendant's failure to analyze the claims under *Golding*'s four prong test prevents us from reviewing these claims. The defendant's brief did not include analysis of whether

---

[9] A more complete discussion of inadequate briefing is contained in part IV of this opinion

the record was adequate for this court to review the claimed constitutional violations, whether the issues involved are of constitutional magnitude, whether the trial court clearly violated the defendant's constitutional rights, and whether the state failed to demonstrate that the error was harmless. We are not required to review issues that have been improperly presented to this court through an inadequate brief. *State* v. *Tweedy*, supra, 219 Conn. 510 n.17; *State* v. *Merritt*, 36 Conn. App. 97; *State* v. *Yopp*, supra, 35 Conn. App. 750; see also Practice Book § 4065. This is true even though the defendant requests review of these issues under *Golding*. *State* v. *Merritt*, supra, 97; *State* v. *Yopp*, supra, 750. Our Supreme Court has held that constitutional analysis must be conducted in a principled manner. *State* v. *Geisler*, 222 Conn. 672, 685, 610 A.2d 1225 (1992). Because *Golding* review requires the implication of a constitutional issue, we conclude that lack of analysis of these claims under the four prongs of *Golding* prevents us from reviewing the issues further.

The judgment is affirmed.

In this opinion the other judges concurred.